

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| FOREST C. MARTIN, SR., FOREST C. MARTIN, JR., AND NEAL NASSOR MARTIN | CIVIL ACTION NO. 03-1282 |
| -vs- | |
| | JUDGE LITTLE |
| CITY OF ALEXANDRIA MUNICIPALITY POLICE DEPARTMENT, TOMMY CICARDO, POLICE CHIEF, ROBERT T. DISTEFANO, DISTEFANO'S PARTNER, GEORGE TYNES, LT. ELLINGTON, SGT. POWELL, CAPT. LARRY COUTEE, TWO RAPIDES SHERIFF DEPUTIES, ET AL. | |

## MEMORANDUM RULING ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the court are cross motions for summary judgment [Doc. #138] filed by the defendants, Robert T. Distefano ("Distefano"), Stephen Bankston ("Bankston"), Douglas Prestridge ("Prestridge"), and the City of Alexandria ("the City") (collectively, "Defendants"), and the plaintiffs, Forest C. Martin, Sr., et al. ("the Martins") [#146], as to their civil rights action. The Martins filed a response [#145] while the Defendants filed an opposition to the Martins' motion combined with a reply to the Martins' response and a motion to strike all or portions of exhibits attached to the Martins' motion [#149]. For the following reasons, the Defendants' motion for summary judgment and motion to strike are GRANTED while the Martins' motion for summary judgment is DENIED.

## BACKGROUND

On 3 July 2003, the Plaintiffs filed an original Civil Rights Action Complaint under Title 42 U.S.C. § 1983 ("Original Complaint"). The defendants included the City of Alexandria Municipality Police Department ("APD"), as well as the police chief, Tommy Cicardo ("Cicardo"), various lieutenants and officers, including Officer Distefano, and unnamed Rapides Parish Sheriff's deputies. On 24 September 2003, Martin filed a Motion for Leave to Cure Defects and Amend Complaints [#35]. Most notably, Martin proposed to file a Second Amended Complaint to exchange any reference to the APD in his First Amended Complaint to the City as the proper defendant. Martin also wanted to replace John Does #s 2-3 as he had identified them as APD Officers Bankston and Prestridge. On 14 April 2004, in a Memorandum Ruling [#84], this court granted Martin's motion over opposition by Cicardo and another officer and the Second Amended Complaint [#88] was filed. In that Ruling, this court approved the substitution of the City as the proper defendant and granted Martin's voluntary dismissal of most of the other defendants except for Distefano, Bankston, Prestridge (collectively, the "officer-Defendants"), and the City.

In pertinent part, the Second Amended Complaint alleges the following facts. Forest C. Martin, Sr. ("Martin") owned a janitorial services company that rendered cleaning services to various commercial businesses in Alexandria, Louisiana. On 25 May 2003, Martin and his two minor sons were performing cleaning services at around 10:30PM at the Walker Honda car dealership according to his contract. After receiving an anonymous tip about a suspected burglary at the dealership, because a normally locked gate looked broken open and

2

three black males were seen in the used car trailer office next to the dealership late at night, the APD dispatched one officer who was later joined by two other officers. The Martins alleged that they were forcibly detained and unreasonably questioned at gunpoint for about seven-ten minutes. Although they were not arrested, incarcerated, or physically harmed, the Martins alleged that the manner in which the investigation and questioning were performed by the officers violated their civil rights.

Martin's Second Amended Complaint also eliminated five causes of action, leaving these three claims: (1) a Fourth Amendment claim against the officer-Defendants involving an unlawful arrest, seizure, detention, and use of excessive force made without probable cause, resulting from the Martins' detention and questioning at gunpoint at Walker Honda on 25 May 2003 at 10pm; (2) a Fourteenth Amendment claim against the officer-Defendants involving misfeasance/nonfeasance, racial discrimination, ethnic profiling, negligence, aggravated assault, intimidation, terrorizing, and negligent injury arising from the Walker Honda incident, along with a First Amendment denial of free speech without due process of law claim arising from the post-incident investigation; and (3) a 42 U.S.C. § 1983/vicarious liability/gross negligence claim against the City, under the doctrine of *respondeat superior*, for failing to properly train its dispatchers to follow procedures by dispatching the officer-Defendants to an incident outside of the City's jurisdiction, and for inadequate supervision, incomplete and inadequate investigation, disciplinary action, and training.

On 1 March 2005, the Defendants filed their Motion for Summary Judgment [#138] along with a thirty-three page memorandum. In summary, they make the following seven

3

arguments rejecting the Martins' federal and state law claims: (1) the Fourth Amendment investigatory stop claim should be dismissed because: (a) all of the facts taken together establish reasonable suspicion for the Terry v. Ohio, 392 U.S. 1 (1968), stop to question the Martins and to determine whether they presented a danger; and (b) there is no evidence that the officer-Defendants knew that Walker Honda was outside the city limits when they went to investigate and, even assuming the dispatcher made an error, that neither negates their reasonable suspicion nor invalidates the Terry stop; (2) the Fourth Amendment excessive force claim should be dismissed because: (a) simply pointing a gun at the Martins during a Terry stop does not make it unreasonable because it was reasonably necessary for officer safety, citing, *inter alia*, United States v. Hensley, 469 U.S. 221 (1985), United States v. Sanders, 994 F.2d 200 (5th Cir. 1993), and United States v. Campbell, 178 F.3d 345, 349 (5th Cir. 1999); and (b) the Martins fail in their burden to prove an excessive force claim to show an injury which resulted directly and only from the use of force that was excessive to the need and the force used was objectively unreasonable, and that the injury, if any, was more than *de minimis*, sufficient for a Fourth Amendment violation, citing Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001); (3) the Martins' First Amendment claims, vague and conclusory but likely alleging retaliation by the City for exercising their free speech rights by complaining to APD, should be dismissed against all Defendants because there is no First Amendment right to be free from some forms of governmental intrusions and the Defendants' actions do not rise to the level of a First Amendment violation, citing Colson v. Grohman, 174 F.3d 498 (5th Cir. 1999); (4) the Fourteenth Amendment claims should also

4

be dismissed because: (a) as for the false arrest or due process rights to be free from false arrest claim, the same Fourth Amendment analysis above applies to mandate dismissal; (b) it is not clear what the Defendants did to violate the Fourteenth Amendment but damage to one's reputation does not implicate any protected property or liberty interest and a determination above that the First Amendment was not violated requires the same conclusion as to the Fourteenth Amendment; (5) the officer-Defendants are entitled to raise a qualified immunity defense, which requires a two-step process, and even if the Martins suffered a deprivation of their constitutional right to be free from arrest and excessive force under step one, which is denied, any objectively reasonable officer confronted with the same facts would have responded and investigated in the same way to the dispatch; (6) the direct § 1983 claim against the City should be dismissed because the City cannot be held liable for the officer-Defendants' actions under *respondeat superior* and, under the three-part municipal liability test, the Martins fail the third part by not making the necessary allegations or providing the specific factual support as to which improper training, policy, or procedures were used by the City to directly cause the Martins' injury; and (7) their state law claims for false arrest/imprisonment and intentional infliction of emotional distress must be dismissed because: (a) Louisiana has adopted the Fourth Amendment analysis for false arrest/imprisonment and should similarly be dismissed; (b) the officer-Defendants were not negligent and any use of force was appropriate because they encountered three males with objects in their hands and Distefano drew his weapon only briefly and the detention lasted no more than fifteen minutes with no arrests or physical contact; and (c) qualified immunity

also protects the officer-Defendants from any state law claims.

On 18 March 2005, the Martins simultaneously filed a lengthy sixty-two page Response [#145] and a Motion for Summary Judgment with a nearly identical and equally lengthy sixty-two page Memorandum [#146]. As discussed below with the Defendants' Motion to Strike, most of the Response and Memorandum is superfluous because the Martins try to establish a contradictory set of facts based on exhibits which are inadmissible and the remaining facts are irrelevant as a direct response to the Defendants' Motion. In the Response, the Martins first try to point out that, about three months before the Walker Honda incident, two APD officers were killed and three more were wounded in a vicious ambush and three hour gun fight with a young black male who was also killed. The Martins allege that this presumably affected the psychological state of mind of all APD officers to the extent that this earlier incident adversely influenced the way the officer-Defendants, specifically Distefano by drawing his gun, reacted at Walker Honda. The Martins next argue that, due to the differences in testimony by the officer-Defendants during their Internal Affairs interview and Distefano's police report, a "Three Act Paradigm of the incident like that used in screenplay writing" should help this court better understand the events in their proper chronological context: (1) Act I begins with the anonymous call and ends with all officer-Defendants arriving at Walker Honda; (2) Act II begins at the front gate and ends with the officer-Defendants' approach to the Used Car Office before the lights were turned off; and (3) Act III begins with Martin and his sons exiting the Used Car Office and ends with the officer-Defendants giving Martin APD's phone number. They try to assert that, because the

6

APD computer aid dispatch system printout indicates Distefano was on the scene for the twenty minutes, Bankston for eleven, and Prestridge for nine minutes, the gun-pointing incident lasted much longer than the two to three minutes the officer-Defendants contended it lasted. Inexplicably, a large portion of the Response is spent attacking the officer-Defendants' interrogatory answers as inconsistent or contradictory. The Martins claim that Distefano conveniently forgot to put in his police report that he was sent to investigate three *black* males in an attempt to ignore the fact that he overreacted to the Martins by racially profiling them and prematurely pointing a gun at them. They further claim that, when they had turned off the lights in the Used Car Office and came onto the porch carrying janitorial equipment, the car lot was brightly illuminated at night as always such that Distefano should have clearly seen that the Martins did not have weapons in their hands and that no criminally suspicious activity was afoot.

As for actual legal arguments in their Response and Motion, the Martins first contend that their high-risk detention constituted an arrest without probable cause under the Fourth Amendment, not merely a <u>Terry</u> stop. They claim that no crime was actually reported by the call to the dispatcher and that the officer-Defendants should have investigated the veracity and credibility of the anonymous tip first before investigating and at least should have checked to see if the gate was actually broken. Second, they attempt to distinguish the officer-Defendants' citations, specifically <u>Hensley</u> and <u>Sanders</u>, by arguing that, in those cases, there was a nexus between the person detained and the type of offense announced in the dispatch. By contrast, the Martins contend that the information given to Distefano by the

dispatcher was vague and that there was no nexus in time, location, or identity because no crime had been reported, just a suspicious person report of three black males. Third, the Martins argue that the officer-Defendants are not entitled to qualified immunity because their actions were objectively unreasonable and they were subjectively aware of the facts that made their actions unreasonable. They assert that Distefano, as a veteran APD officer for eight years, compared to the two relatively new officers Bankston and Prestridge, should have known that his gun-pointing conduct was unlawful. Fourth, as for the excessive force claim, the Martins contend that no physical injury is required for a § 1983 claim when an officer holds a gun to the head of a young child and threatens to pull the trigger, citing Ikerd v. Blair, 101 F.3d 430 (5th Cir. 1996). As proof of his mental distress damages, Martin asserts that he was forced to end his janitorial contracts with various companies and, when he had to take medication for his psychological injuries, he was unable to commit and enter into several more janitorial contracts. He also indicates that he has "stacks of evidence" if this case goes to trial, which inherently contradicts the purpose of their Motion for Summary Judgment, that show his loss of income and his son's lost opportunity for obtaining a future athletic scholarship due to the inability to participate in track events since the incident. Finally, as to the claim against the City, the Martins allege that the City was responsible either directly or indirectly for their injuries due to gross negligence and failure to properly train the dispatchers and officer-Defendants to follow the APD Rules and Regulations Manual ("APD Manual"). They claim that the City is liable for the dispatchers' error in sending the officer-Defendants to Walker Honda which was outside the city limits, and that

8

the dispatchers should have transferred the call to the Rapides Parish Sheriff's Office. They further contend that the City did not properly train Distefano in the use of his camera in his patrol car, which, if turned on, could have avoided the filing of this complaint, and failed to train the officer-Defendants in the use of the guns which were used to terrorize and subject the Martins to unnecessary threats of death and forced them to fear the exercise of their First Amendment right to free speech by talking back during the incident. The Martins cite numerous sections of the APD Manual that the officer-Defendants allegedly violated, most notably Sections 202 and 600.2 (removal/display and discharge of firearms while on duty). After the incident, the Martins allege that the City, mostly through the APD's Internal Affairs Officers, failed to properly process and investigate their complaint and violated, *inter alia*, Sections 300.5 and 301.1 (recording and expediting complaints and procedures for investigation of allegations and complaints). Finally, as to the Martins' state law claims including misfeasance/nonfeasance, racial discrimination, ethnic profiling, negligence, aggravated assault, intimidation, terrorizing, and negligent injury, they incorporate and apply the same arguments presented for their federal law claims.

On 4 April 2005, the Defendants filed a Motion to Strike and Memorandum in Opposition to the Martins' Motion [#149]. The Defendants seek to strike the following exhibits attached to the Martins' Motion: 1, 7, 7A, 7D, 9, 13, 13A, 17-18, 18A, 20, 20A-C, 21-23, 25, 25A, 27A-B, 28-29, 33, and the photograph exhibits of Walker Honda as either inadmissible under FRCP 56 or the Federal Rules of Evidence because they are inadmissible hearsay or irrelevant or prejudicial. Most of these exhibits are affidavits of conversations as

remembered by Martin between himself and APD officers. The Defendants allege that, once the inadmissible exhibits are excluded, the Martins' Response and Motion devolves into a discussion of facts which are irrelevant to their claims and to the Defendants' Motion. In the end, the Martins do not dispute the following essential facts: (1) that the incident lasted seven to ten minutes; (2) that APD officers Distefano, Prestridge, and Bankston were dispatched in response to a call that three black males were inside Walker Honda at about 10:30pm on 25 May 2003; (3) that when Distefano arrived, he investigated the dispatch by asking the Martins about their presence and explained the nature of the call and officer safety for why he drew his gun. The Defendants also add that, in addition to the cases previously cited, Hinojosa v. City of Terrell, Tex., 834 F.2d 1223 (5th Cir. 1988), entitles them to a dismissal of all claims against the officer-Defendants. Hinojosa also involved a civil rights claim for emotional distress damages against an officer who pointed a gun at the plaintiff and the Fifth Circuit reversed the jury determination, finding that the plaintiff's temporary psychological damages did not rise to an actionable level under § 1983. Furthermore, as to the claim against the City, the Defendants assert that the allegations of incomplete or falsified reports or improper Internal Affairs investigations have no relevance because the Martins' claim is that the City is liable for an improper stop. Citing Nowell v. Acadian Ambulance Service, 147 F. Supp. 2d 495 (W.D. La. 2001) and other district court decisions, the Defendants argue that a single incident of a civil rights violation by a police office was insufficient to be evidence of a persistent and widespread practice by the City. The Defendants also point out that the dispatcher negligence claim, which was in their Third

Amended Complaint that was not permitted, is not properly before this court because the Second Amended Complaint does not contain such a claim against the City. Next, the Defendants respond that the Martins have not suffered any injury compensable or actionable under § 1983 or Louisiana law, either for the gun-pointing incident, or for the comments, statements, and alleged verbal threats by Distefano and the APD Internal Affairs Officers. Finally, as to the Martins' Fourteenth Amendment Equal Protection claim, while the Defendants acknowledge that the Martins are black, there was no evidence that the Martins were singled out because of their race. The event occurred in response to a dispatch that the persons in the Used Car Office were black males, a fact confirmed upon arrival. The Defendants assert that their actions complied with the Fourth Amendment, the only amendment at issue based upon the law and the Second Amended Complaint, and that there is no evidence to support an Equal Protection claim under the Fourteenth Amendment.

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when viewed in the light most favorable to the nonmovant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Am. Home Assurance Co. v. United Space Alliance, LLC, 378 F.3d 482, 486 (5th Cir. 2004). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not

negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323-25

(1986)). If the movant fails to meet this initial burden, the motion must be denied, regardless

of the nonmovant's response. Id. But once the movant has met this burden, the nonmovant

must come forward and show by affidavits, depositions, or other admissible evidence that

specific facts exist over which there is a genuine issue for trial. See FED. R. CIV. P. 56(e);

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The mere fact that both parties argue that there are no genuine issues of material fact

does not automatically mean that a trial is unnecessary or that no factual issues exist. Cross-

motions must be considered separately because each movant bears the burden of establishing

that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter

of law. See Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir.

2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of

law, this court may render summary judgment. Id.

First, the Defendants motion to strike the following exhibits attached to the Martins'

Motion: 1, 7, 7A, 7D, 9, 13, 13A, 17-18, 18A, 20, 20A-C, 21-23, 25, 25A, 27A-B, 28-29,

33, and the photograph exhibits of Walker Honda is granted. These exhibits are either

inadmissible under the Federal Rules of Evidence (FRE) as hearsay or else they are

irrelevant. Most of these exhibits are clearly hearsay affidavits of two-year old conversations

as remembered by Martin between himself and APD officers. Exhibit 28 is a copy of an

unsigned abstract of an evaluation letter from a psychiatrist, Dr. Lynn Simon (her signed

letter and curriculum vitae were submitted later by Martin which was denied by this court on 28 April 2005 [#153]). Dr. Simon evaluated Martin and his sons and diagnosed Martin with anxiety and post-traumatic stress disorder as a result of the incident and recommended individual and marital counseling, to continue gainful employment, and prescribed remeron which has since been discontinued. This is the only exhibit that purports to show any evidence of psychological injuries but it is inadmissible as hearsay with no applicable exception under FRE 801 or 805 or else does not appear to be based on sufficient facts or reliable principles and methods under FRE 702. Even assuming, *arguendo*, that the original letter was signed and notarized, and that a foundation has been laid as to Dr. Simon's credentials and methods, it presents a very limited diagnosis of a temporary nature, particularly because Martin's use of medication has been discontinued and she recommends that Martin is well enough to continue working. It does not present anything approaching the required substantial psychological injuries, as discussed below. Thus, Exhibit 28 and the other above exhibits are not admitted.

Second, it is clear that there is no genuine issue as to any material fact and the issue is which party, if any, is entitled to judgment as a matter of law. Both parties do not dispute the following material facts relevant to both motions: (1) on Sunday, 25 May 2003, Martin and his two minor sons were performing cleaning services late at night at the Walker Honda car dealership; (2) after receiving an anonymous phone call about a suspected burglary at Walker Honda, because a normally locked gate looked broken open and three black males were seen in the well-lighted used car trailer office next to the dealership, the APD

dispatched Officer Distefano to the scene at around 10:30PM; (3) after also receiving the dispatch, two other officers, Bankston and Prestridge, drove to the Walker Honda to provide back-up; (4) all officers believed that Walker Honda was within the City's limits when they received the dispatch; (5) upon arrival, Officer Distefano saw that three black males were at the used car trailer office; (6) Bankston arrived shortly after Distefano, parked at the front gate, saw Distefano make contact with the three males from about thirty yards away, and approached from the side in case one of the males ran but stayed about forty feet to the left of Distefano; (7) Prestridge arrived last, parked in a ditch, saw the two other officers, and stayed farther away from a different angle, about fifty to seventy-five feet away from Distefano and out of earshot, in order to observe the whole scene to make sure no one else was around; (8) as all the officers were focused on the three males, none of the officers had an opportunity to check the front gate first; (9) Distefano approached the three men, who later were identified as the Martins, and yelled out a question as to what they were doing out there, and Martin yelled back that they were working and cleaning up; (10) at the time, the Martins were standing on the porch, wearing plain clothes, not uniforms, and had keys and cleaning equipment in their hands; (11) at this point, Distefano drew his gun and aimed at the Martins with his finger on the trigger, Bankston kept his hand on his unholstered gun, but never drew it, and Prestridge also did not draw his gun; (12) Distefano and Bankston ordered the Martins to put their equipment down, hold their hands up in plain view, come off the porch, bypass their van, and walk towards Distefano; (13) the Martins complied and Distefano holstered his gun and began to walk towards them; (14) Martin approached

14

Distefano, explained that he owned a cleaning service, that he and his sons were working under contract for Walker Honda cleaning the building, that they had the keys, and cursed at Distefano that he did not appreciate having a gun pointed at him; (15) Distefano told Martin of the nature of the dispatch call and advised him that his gun had been drawn for officer safety because Distefano wanted to make sure he would make it home that night; (16) Distefano asked for Martin's driver's license and, after Martin gave it to him, Martin started staring at Distefano; (17) Distefano asked if Martin had a problem with him and Martin asked Distefano why he drew his gun on him; (18) Distefano again explained to Martin why he drew his gun and why the officers were there and, to avoid this type of thing in the future, Martin should call the APD's headquarters and let them know when he would be cleaning the building late at night and Martin was given the phone number; (19) the Martins were not arrested, were allowed to leave, and the officers left; (20) the entire incident took about seven to ten minutes; (21) while Distefano left after spending about twenty minutes total at the scene, Bankston and Prestridge left even earlier after about ten minutes total; (22) Martin filed a complaint with the APD a couple of days later and, after a thorough Internal Affairs Investigation including interviews with the Martins and all three officers, the officer-Defendants were cleared of any serious infraction, other than failing to turn on their cameras in their patrol cars. See Defs.' Mot. for S.J., Statement of Uncontested Facts; Pls.' Mot. for S.J., Statement of Undisputed Chronological Facts.

The issue for the Defendants' Motion, therefore, is whether Distefano, Bankston, and Prestridge are entitled to judgment as a matter of law based on qualified immunity on the

Martins' first two causes of action: (1) their Fourth Amendment unlawful arrest, seizure, detention, and excessive force claim and (2) their First/Fourteenth Amendment misfeasance/nonfeasance, racial discrimination, ethnic profiling, negligence, aggravated assault, intimidation, terrorizing, and negligent injury claim. As for the Martins' Motion, the issue is whether they are entitled to judgment as a matter of law on their third cause of action, a § 1983/vicarious liability for gross negligence/*respondeat superior* claim against the City as it relates to their hiring/training policy or the post-incident investigation.

**B.    42 U.S.C. § 1983 and the Qualified Immunity Standard**

Section 1983 allows citizens to file suit alleging the deprivation of federal constitutional rights caused by state actors. 42 U.S.C. § 1983 (2005). The doctrine of qualified immunity protects police officers from suit unless their conduct violates a clearly established constitutional right. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law" and the "entitlement is an immunity from suit rather than a mere defense to liability." Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005). The Fifth Circuit has advised that "[b]efore this court–or any court–can adjudicate the merits" of the plaintiffs' claims, the plaintiffs "must overcome the bar of qualified immunity." Davis, 406 F.3d at 380. Thus, once the qualified immunity defense has been raised, the Martins have the burden of

16

rebutting the defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." Id. This requires a specific factual allegation to support each material fact because generalized factual pleadings are insufficient to overcome a qualified immunity defense. See Reyes v. Sazan, 168 F.3d 158 (5th Cir. 1999). Fifth Circuit precedent does not require that an official prove that he did not violate clearly established federal rights because that burden is placed on the plaintiffs. Davis, 406 F.3d at 380.

In ruling on a motion for summary judgment based on a qualified immunity defense, this court undertakes a two-step analysis, deciding the constitutional inquiry before the qualified immunity question. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005). When confronted with a qualified immunity defense, the court must ask first the following question: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Brosseau v. Haugen, 125 S. Ct. 596, 598 (2004) (quoting Saucier).

In performing the qualified immunity analysis, this court must first determine whether the Martins have alleged a violation of a constitutional right and if so, determine whether the officer-Defendants' conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. Anderson v. Creighton, 483 U.S. 635, 639 (1987). The second prong of the analysis "'is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002) (emphases

17

omitted) (quoting Hare v. City of Corinth, 135 F.3d 320, 326 (5th Cir. 1998)). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. See Malley v. Briggs, 475 U.S. 335, 341 (1986).

Under the first step, the court determines whether there is evidence to sustain a finding that the officer-Defendants' conduct violated the Martins' constitutional rights. Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004). If not, no further inquiry is required and the defendants are entitled to summary judgment based on qualified immunity. Id. If a violation is properly alleged, the second step is to determine whether the defendants' actions violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In an action where police officers are the defendants, the relevant dispositive inquiry in determining whether a right is clearly established is whether there is evidence to sustain a finding that, under the existing circumstances, it would have been "'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Johnson, 379 F.3d at 301 (quoting Saucier, 533 U.S. at 202)). If not, the officer-Defendants are entitled to qualified immunity. Id. Furthermore, although the Martins' do not appear to have alleged valid state law claims distinguishable from their federal claims, to the extent that they have asserted state law claims, the qualified immunity defense, if valid, also applies. See Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005) (stating that Louisiana applies qualified immunity principles to state constitutional law claims based on "[t]he same

factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983."). Thus, this court must first determine whether there is evidence to sustain a finding that the officer-Defendants' conduct violated the Martins' constitutional rights as to each of their first two federal and state law claims.

1. **Fourth Amendment Unlawful Arrest, Seizure, Detention, and Excessive Force Claim**

Individuals have a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty, and violation of this right can be grounds for a suit under § 1983. See Dennis v. Warren, 779 F.2d 245, 247 (5th Cir. 1985). The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief stop short of traditional arrest. See Terry v. Ohio, 392 U.S. 1, 16-19 (1968).

a. **Unlawful Arrest, Seizure, and Detention Claim**

The Martins allege that their Fourth Amendment rights were violated when they were unlawfully arrested, seized, and detained. On the other hand, the Defendants dispute that the Martins were arrested at all and contend that they were merely detained under a valid Terry stop. An arrest would require probable cause whereas a Terry stop requires only a reasonable suspicion of criminal activity. Terry, 392 U.S. at 30; Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005). Federal courts generally look to state law to determine whether an arrest is valid because arresting officers are subject to local standards, but whether there has been a constitutional violation is governed by § 1983. 9 CAUSES OF ACTION 237 (West 2004). In Louisiana, an arrest involves the taking of one person into custody by another by an actual

restraint of the person through force or submission of the person arrested. LA. CODE CRIM. PROC. ANN. art. 201 (West 2005). In this case, the Martins' claim of unlawful arrest requires dismissal because the Second Amended Complaint failed to state any facts which would indicate the existence of any custody or actual restraint. Thus, because the Martins were not arrested, the court will dismiss their unlawful arrest claim, leaving only their unlawful seizure, detention, and excessive force claims.

An officer seizes a person when he "'by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen.'" Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) (emphasis added)); see also Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (holding that when a person has been restrained through a show of authority, that person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). In addition, the "governmental termination of freedom of movement" must be made intentionally. Flores, 381 F.3d at 396.

Here, although physical force was not used, it is fairly uncontested that the Martins were seized at the time Officer Distefano had his gun pointed at them. It is clear that a reasonable person would have believed that the Martins were not free to leave at the point Distefano pointed his gun at them to restrain their liberty in a show of authority. Thus, the Martins were briefly seized and detained. The issue here, however, is whether there was reasonable suspicion for the officers to seize and detain the Martins.

Under Terry, police officers may stop and briefly detain an individual for

20

investigative purposes if they have reasonable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968); Goodson v. City of Corpus Christi, 202 F.3d 730, 736-37 (5th Cir. 2000). "Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." United States v. Michelletti, 13 F.3d 838, 840 (5th Cir.1994) (en banc). "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized . . . "hunch"'. The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." United States v. Sokolow, 490 U.S. 1, 7 (1989). Nevertheless, "[t]his reasonable suspicion standard is less demanding than the probable cause standard[.]" United States v. Sanders, 994 F.2d 200, 203 (5th Cir. 1993). The "presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992). Factors that ordinarily would "constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers[.]" United States v. Holloway, 962 F.2d 451, 459 (5th Cir. 1992).

In this case, the precise issue is whether the Martins' physical appearance fit the description of the APD dispatch sufficiently to give rise to reasonable suspicion that they were the suspected burglars at the Walker Honda dealership. The APD received an anonymous phone call that three black males were inside the Used Car Office at Walker Honda at about 10:40pm and that the gate appeared to be broken open. The officer-

Defendants were dispatched by APD to investigate. When they arrived at Walker Honda, they encountered three black males coming out of the Used Car Office who later were identified as the Martins, matching the dispatcher's description. The APD dispatch, thus, gave the officer-Defendants reasonable suspicion to stop and briefly detain the Martins at Walker Honda. The totality of the circumstances confronting the officer-Defendants, that the Martins matched the dispatch's physical description and location of the suspects, that the dispatch was given at about 10:40pm, believed to be after the business hours of the dealership, and that the caller stated that the gate appeared to be open, indicating that there was a suspected burglary in progress, are sufficient to give them reasonable suspicion that criminal activity was afoot. The officer-Defendants, therefore, are entitled to summary judgment based on qualified immunity on the Martins' unlawful seizure and detention claim because the dispatch gave them reasonable suspicion to stop and detain the Martins briefly.

### b.    Excessive Force Claim

The bulk of the Martins' Fourth Amendment claim depends on whether they suffered an "injury" by having a gun briefly pointed at them in order to state an excessive force claim. The Supreme Court has stated that excessive force claims are to be judged under the Fourth Amendment's "objective reasonableness" standard. See Brosseau v. Haugen, 125 S. Ct. 596, 598 (2004); Graham v. Connor, 490 U.S. 386, 388 (1989); Tennessee v. Garner, 471 U.S. 1 (1985). To prevail on an excessive force claim, a plaintiff must first show that he was seized and then must prove: (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly

22

unreasonable. See Tarver v. City of Edna, 410 F.3d 745, 751-52 (5th Cir. 2005); Flores v. City of Palacios, 381 F.3d 391, 397-98 (5th Cir. 2004). As discussed above, the Martins were briefly seized and detained during a valid Terry stop. As for the rest of the excessive force inquiry, however, the Martins cannot even prove the first prong that they were injured, which entitles the officer-Defendants to summary judgment based on qualified immunity.

The Defendants refer to Hinojosa v. City of Terrell, Tex., 834 F.2d 1223, 1229-30 (5th Cir. 1998), for the notion that a plaintiff's claim for emotional distress damages due to an officer's gun being pointed at him is not redressable. Their citation to Hinojosa is on point for the distinction that a show of force by gun-pointing is not constitutionally excessive force, as discussed below, but it is a bit outdated with respect to the physical injury requirement. While a plaintiff alleging an excessive force claim must show that he has suffered "at least some injury", the Fifth Circuit has held that physical injuries are not required because purely psychological injuries may sustain a Fourth Amendment claim. Flores, 381 F.3d at 397-98; Petta v. Rivera, 143 F.3d 895, 902 (5th Cir. 1998). Although a "significant injury" is no longer required for an excessive force claim, see Hudson v. McMillian, 503 U.S. 1, 5-7 (1992), the injury must be more than *de minimis*, evaluated in the context in which the force was deployed. See Tarver v. City of Edna, 410 F.3d 745, 751-52 (5th Cir. 2005) (finding that the plaintiff has not satisfied the injury requirement for a § 1983 claim because he did not allege any degree of physical harm greater than *de minimis* from the handcuffing); Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (holding that "handcuffing too tightly, without more, does not amount to excessive force."). The proper

23

inquiry is whether the use of force was "grossly disproportionate to the need." Petta, 143 F.3d at 901-02. Consequently, only *substantial* psychological injuries are sufficient to satisfy the injury element of a § 1983 claim for excessive force under the Fourth Amendment. Flores, 381 F.3d at 400-01.

Here, however, the Martins have not proffered any competent admissible evidence, through affidavits or medical records, that show that they have suffered *any* substantial psychological injuries from the incident that are greater than *de minimis*. As discussed above, the only medical evidence submitted by the Martins, Exhibit 28, is inadmissible and, even if it were admissible, it does not show that they suffered *substantial* psychological injuries. There is no need, then, to proceed further in the excessive force inquiry because the Martins have failed to demonstrate that they suffered substantial psychological injuries from the brief seizure and detention and questioning at gunpoint by the officer-Defendants.

Even assuming, *arguendo*, that the Martins suffered substantial psychological injuries as a result of the incident, the brief show of force during a valid Terry stop was not grossly disproportionate to the need to investigate a suspected burglary late at night to constitute excessive force. The Supreme Court has held that, with respect to deadly force, it is unreasonable for an officer to "seize an unarmed nondangerous [burglary] suspect by shooting him dead." Tennessee v. Garner, 471 U.S. 1, 11 (1985). More recently, however, the Court held that, even where an officer shot a disturbed felony suspect in the back who was fleeing in a car, the officer *still* was entitled to qualified immunity against an excessive force claim because the people in the immediate area were put at risk by the suspect's flight.

24

Brosseau v. Haugen, 125 S. Ct. 596, 597 (2004). Similarly, the Fifth Circuit in Hinojosa

held that a plaintiff's temporary emotional distress damages as a result of having an officer's

gun pointed at his face was not redressable under § 1983. See Hinojosa v. City of Terrell,

Tex., 834 F.2d 1223, 1229 (5th Cir. 1988); see also Petta v. Rivera, 143 F.3d 895, 906 (5th

Cir. 1998). In Hinojosa, the plaintiff sued several officers under § 1983, treated by the court

under the Fourteenth Amendment, for allegedly using excessive force against him where, in

the course of a pool hall fight and subsequent arrest, an officer waved a gun in the plaintiff's

face. Hinojosa, 834 F.2d at 1229. The Fifth Circuit reversed the jury verdict because the

plaintiff was not struck or even touched and did not produce sufficient evidence, under an

older physical requirement standard, to support the excessive force finding. Id. at 1230. The

Hinojosa court pointed out the distinction between a display of force in the course of duty

by an officer who said he had feared for his life, which may actually decrease violence and

is not actionable, and the use or attempted use of force. Id. at 1231. Furthermore, the Fifth

Circuit has more recently held that, in an unpublished but persuasive and more factually

analogous decision, the mere pointing of a gun by an officer at a person was not objectively

unreasonable and the plaintiff could not state a valid excessive force claim due to

psychological injuries. See Hodge v. Laryisson, 226 F.3d 642, 2000 WL 1029029, *3 (5th

Cir. 2000) (rejecting the plaintiff's excessive force claim that she suffered psychological

injuries when the officer-defendant pointed a gun at her face because the show of force under

the circumstances of the drug raid was not objectively unreasonable).

     In this case, the facts are far less egregious than in Brosseau or Garner and are closer

to Hinojosa or Hodge because no shots were fired and no deadly force was used and, thus, no excessive force occurred. Viewing the record in the light most favorable to the Martins show that they were questioned at gunpoint by Officer Distefano for only seven to ten minutes, only a short period of time, and at most for the entire twenty minutes Distefano was on the scene. There is no dispute that the officer-Defendants did not arrest, handcuff, or even physically touch the Martins. Distefano arrived late at night and stated that he was around thirty yards away from the Martins when he saw them exit the Used Car Office and come onto the porch with objects in their hands. Distefano stated in his Internal Affairs interview that he was in fear for his life when he drew his gun and ordered the Martins to show him their hands and come off the porch. Once Officer Distefano got closer, asked for and looked at Martin's identification, figured out that the Martins were not burglary suspects and did not have weapons in their hands, Distefano holstered his weapon and no shots were fired. Just as in Hinojosa, hindsight may show that there was no need to point the gun at the Martins. Distefano's gun-pointing, however, falls squarely under a display of force for officer safety in the course of duty because it occurred during a valid Terry stop late at night from a distance and he reasonably could not identify what objects the Martins had in their hands until he got closer. Thus, the Martins' hindsight argument fails under Hinojosa. Their excessive force claim based on emotional distress also fails under Petta because the Martins cannot show that they suffered substantial psychological injuries as a result of the brief display of force. Even if the Martins could, the brief display of force was not grossly disproportionate to the need to investigate a suspected burglary in progress late at night from

26

a distance. Taken in the light most favorable to the Martins, the facts alleged show that the officer-Defendants' conduct did not violate the Martins' Fourth Amendment rights because no force was used and no substantial psychological injuries were proven. The officer-Defendants, therefore, are entitled to summary judgment on their qualified immunity defense to the Martins' Fourth Amendment excessive force claim.

**2.    First/Fourteenth   Amendment   Misfeasance/Nonfeasance,   Racial Discrimination,  Ethnic  Profiling,  Negligence,  Aggravated  Assault, Intimidation, Terrorizing, and Negligent Injury Claim**

This cause of action likely entails two separate claims. The first is for ethnic or racial profiling, aggravated assault, intimidation, terrorizing, or negligent injury in violation of the Fourteenth Amendment's Equal Protection Clause for targeting the Martins because of their race. The second is a separate First Amendment claim for Distefano's conduct during the incident and for the allegedly discriminatory or negligent post-incident investigation by the City which restricted their right to freedom of speech.

**a.    Fourteenth Amendment Equal Protection Claim**

To state a Fourteenth Amendment Equal Protection violation, a plaintiff must show that the defendants are selectively enforcing a state statute based upon any impermissible ground, such as by distinguishing between different groups. Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir. 1996) (stating that the court may conduct an equal protection inquiry only "if the challenged government action classifies or distinguishes between two or more relevant groups."). The plaintiff must also offer proof of a discriminatory purpose. See Washington v. Davis, 426 U.S. 229, 239-42 (1976) (requiring proof of discriminatory intent

in equal protection cases); <u>United States v. Chavez</u>, 281 F.3d 479, 487 (5th Cir. 2002) (requiring proof of a discriminatory purpose in reversing the granting of a motion to suppress statements).

Here, the Martins have not proffered any specific City policy or state statute which the officer-Defendants have selectively enforced based on impermissible grounds. As discussed below, none of the relevant APD Manual sections referring to displaying or using a weapon have been shown to be inadequate or to have been violated by the officer-Defendants. The Martins also failed to offer any evidence that would reveal a policy, custom, or intention by the APD to impermissibly target only black males for arrest or questioning at gunpoint. The court's independent review of the APD Manual similarly reveals no such APD Manual section which distinguishes between groups of persons, whether based on race or other impermissible classification. Absent proof of a written policy by the City showing selective enforcement based on discriminatory intent, the Martins' Fourteenth Amendment Equal Protection claim fails. The officer-Defendants are entitled to summary judgment on the Martins' Fourteenth Amendment Equal Protection claim based on qualified immunity.

### b.     First Amendment Claim

The Martins make vague First Amendment claims that they were denied free speech without due process of law and appear to be addressed at both the officer-Defendants during the incident and at the City for the post-incident investigation. Their claims, however, clearly have no merit and are dismissed.

28

During the incident, the Martins claim that when Distefano asked Martin if he had a problem, Martin began to answer but stopped suddenly and gestured that he was zipping his lips closed to avoid provoking Distefano who had his gun pointed at him. First, the First Amendment relates to freedom of speech, not due process of law, which is covered under the Fourteenth Amendment for state actors. U.S. CONST. amend. I, XIV, § 1. Second, there is no evidence that Distefano or any of the officer-Defendants prevented Martin from exercising his free speech rights. On the contrary, Distefano specifically asked the Martins what they were doing there and Martin answered and objected to having a gun pointed at him. Any intimidating or terrorizing words by Distefano during the incident is unsubstantiated by the Martins and, in any event, would not be actionable under the First Amendment. Third, as for the First Amendment retaliation claim against the City, the Martins' claim fails as well. A plaintiff must satisfy four elements to recover for a free speech retaliation claim: (1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions. Finch v. Fort Bend Independent School Dist., 333 F.3d 555, 563 (5th Cir. 2003). The Martins fail to prove even the first element for a First Amendment retaliation claim because none of the Martins are public employees who have suffered an adverse employment decisions as a result of exercising their freedom of speech. As to their due process claim in processing the complaint, which is discussed below, the Martins present no evidence that the

29

City prevented them from filing a complaint. The Defendants, therefore, are also entitled to summary judgment based on qualified immunity because the Defendants' conduct did not violate the Martins' First Amendment rights.

**3.     § 1983/Vicarious Liability for Gross Negligence/*Respondeat Superior* Claim Against the City**

As for the Martins' third claim against City, municipalities are not eligible for the qualified immunity defense which only applies to government officials. See de la O v. Hous. Auth. of City of El Paso, Tex., --- F.3d ---, 2005 WL 1663940, *2 (5th Cir. 2005) (stating that the doctrine of qualified immunity is applicable only to government officials, not municipal entities); Kinney v. Weaver, 367 F.3d 337, 383-84 (5th Cir. 2004) (implying that qualified immunity is only available for public officials and not municipalities). Congress, however, did not intend for municipalities to be held liable under 42 U.S.C. § 1983 unless an action pursuant to an official municipal policy of some nature caused a constitutional tort. Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 308 (5th Cir. 2004). A city, therefore, "cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691. Thus, to the extent that the Martins' claim against the City relies on vicarious liability or *respondeat superior* for hiring these police officers, that claim is dismissed as a matter of law, leaving only their claim under § 1983 for gross negligence. Furthermore, to the extent that the Martins' claim against the City relies on improper training

of the dispatch officers, for dispatching APD officers to Walker Honda, which was outside

city limits, that claim was not asserted in the Second Amended Complaint and, therefore, is

not properly before this court.

Municipal liability requires that the alleged unconstitutional action is a result of

municipal policy. Id. at 690-91. Thus, municipal liability "inures only when the execution

of a local government's policy or custom causes the injury." Baker v. Putnal, 75 F.3d 190,

200 (5th Cir. 1996). To establish a municipality's liability for a constitutional tort, the

plaintiff must show (1) that the municipality adopted a policy with "deliberate indifference"

to its known or obvious consequences, and (2) that the municipality was the "moving force"

behind the constitutional violation. Monell, 436 U.S. at 694. Municipal policy for purposes

of § 1983 liability may consist of:

> 1. A policy statement, ordinance, regulation, or decision that is officially
> adopted and promulgated by the municipality's lawmaking officers or by
> an official to whom the lawmakers have delegated policy-making
> authority; or
> 2. A persistent, widespread practice of city officials or employees, which,
> although not authorized by officially adopted and promulgated policy, is
> so common and well settled as to constitute a custom that fairly
> represents municipal policy. Actual or constructive knowledge of such
> custom must be attributable to the governing body of the municipality or
> to an official to whom that body had delegated policy-making authority.

Johnson, 379 F.3d at 309.

In order to hold a municipality liable under § 1983 for its employees' acts, a plaintiff

must show that a policy of hiring or training caused those acts. Id. Such a showing requires

proof that: "(1) the training or hiring procedures of the municipality's policymaker were

inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the

hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." Id. (citing City of Canton v. Harris, 489 U.S. 378, 385-87 (1989)). If the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the "deliberate indifference" standard that applies to supervisor liability. Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir. 1992).

In this case then, to the extent that the Martins' claim is that the City is liable under § 1983 under vicarious liability for gross negligence or *respondeat superior*, it fails completely because the City cannot be held liable solely because they employed the officer-Defendants. Thus, the Martins must prove the first prong of the test, that the City adopted a policy with "deliberate indifference" to its known or obvious consequences. The burden, therefore, is on the Martins to show that: (1) training/hiring procedures of the City were inadequate, (2) the City was deliberately indifferent in adopting the training/hiring policy, and (3) the inadequate training/hiring policy directly caused the Martins' injury. As discussed below, the Martins fail to meet their burden on this claim in every aspect.

The only relevant policies or regulations alleged by the Martins to have been violated by the officer-Defendants are Sections 202 and 600.2 (removal/display and discharge of firearms while on duty). Section 202 states that officers on duty "shall not display or remove their firearm from the holster except as required by duty." Section 600.2B lists several situations when the discharge of firearms may be justified, such as a means of self defense from death or serious injury, to defend the life of another, to prevent a crime in which human

32

life is in serious jeopardy as a result of a suspect's action, or to apprehend a dangerous and violent felon. Section 600.2C states that the discharge of firearms are not generally justified as warning shots or in misdemeanor or traffic incidents. Section 600.2E states that, "[a]s a general rule, officers shall not remove their firearm from the holster or display a weapon unless there is sufficient justification." As no guns were discharged, only Sections 202 and 600.2E apply here. Considering the discussion above that there was reasonable suspicion for a Terry stop and no excessive force occurred, the court finds that the officer-Defendants had sufficient justification in this case for the brief display of force. Thus, neither Distefano nor any of the officer-Defendants violated these or any other sections through their actions and the Martins fail to prove the first prong of municipal liability. The Martins provide no evidence that these or other APD policies are in any respect inadequate. Even assuming, *arguendo*, that the alleged policy is of inadequate police training, the Martins cannot show that the City was deliberately indifferent in adopting these policies with respect to the officer-Defendants. To the extent that the Martins contend that this incident is evidence of a City custom, the Martins present no evidence of any "persistent, widespread practice" for purposes of imputing municipal liability or precluding the Defendants' Motion because a singular incident is insufficient. See Thompson v. Upshur County, 245 F.3d 447, 458 (5th Cir. 2001). The Martins, therefore, cannot prove the first prong, that the City adopted a policy with "deliberate indifference" to its known or obvious consequences with respect to the officer-Defendants.

Furthermore, after the incident, the Martins allege that the APD's Internal Affairs

Officers failed to properly process and investigate their complaint and violated Sections 300.5 and 301.1 (recording and expediting complaints and procedures for investigation of allegations and complaints). Section 300.5 simply states that the APD shall accept, record and investigate all official complaints made by citizens against officers. Section 301.1 states that the APD shall investigate allegations and complaints through lawful investigatory techniques and that the burden of proving guilt rests with the APD. The Martins have not provided any evidence that these sections were violated by the APD. Martin's complaint was accepted and investigated more than adequately. The APD Internal Affairs Officers investigated the Martins' allegations and complaints through lawful investigatory techniques and concluded that none of the officer-Defendants committed an actionable violation, other than the failure to turn on their cameras in their vehicles. The Internal Affairs Officers did not violate these or any other sections through their post-incident investigation. Again, the Martins fail to submit any evidence that these or other APD policies are in any respect inadequate. Similarly, even assuming, *arguendo*, that the alleged policy is of inadequate police training, the Martins cannot show that the City was deliberately indifferent in adopting these policies with respect to the Internal Affairs Officers. To the extent that the Martins contend that the post-incident investigation is evidence of a City custom, the Martins present no evidence of any "persistent, widespread practice" for purposes of imputing municipal liability or precluding the Defendants' Motion because a singular incident is insufficient. See Thompson v. Upshur County, 245 F.3d 447, 458 (5th Cir. 2001). The Martins, therefore, cannot prove the first prong, that the City adopted a policy with "deliberate indifference" to

34

its known or obvious consequences with respect to the APD Internal Affairs Officers. The Martins' § 1983 claims against the City, therefore, fail with respect to both the officer-Defendants and the Internal Affairs Officers and the Defendants' Motion is granted.

## CONCLUSION

In retrospect, in keeping with the Martins' three act/screenwriting theme, their claims remind this court of Shakespeare's Macbeth because they are "full of sound and fury, [s]ignifying nothing." Based on the foregoing, the court GRANTS the Defendants' Motion for Summary Judgment [Doc.# 138], the Motion for Extension of Time [#148], and the Motion to Strike [#149], and DENIES the Martins' Motion for Summary Judgment [#146] and Motion for Leave to File Omitted Photo Exhibit [#141]. Therefore, all the Martins' claims against the Defendants are DISMISSED WITH PREJUDICE.

Alexandria, Louisiana

/6 September 2005

F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE